SMITH
*v.*
STEWART.

*Thursday,*
*June 8.*

---

SMITH *v.* STEWART and Another.

When a bailee converts the thing bailed to his own use, the contract of bailment ceases, and the bailor, without any previous demand, may recover its value of the bailee, upon an implied promise to pay therefor.

A tender of performance of a parol award, and a refusal of the tender, are equivalent to a performance.

Arbitrators will be presumed to have decided in accordance with law, where there is no proof in relation to the proceedings had before them showing the contrary.

*Thursday,*
*June 8.*

ERROR to the *Vigo* Circuit Court.

DAVISON, J.— *Stewart* and *Mosely* sued *Smith* in assumpsit, for goods sold and delivered, for money had and received, for money paid, and for one hundred and two barrels of salt

sold and delivered. Pleas, 1. The general issue. 2. That after the making of the supposed promises set out in the declaration, the parties submitted all the matters in contro- versy in this suit, to the arbitration of *Henry Ross* and *Levi G. Warren*, who awarded that *Smith* should deliver to *Stewart* and *Mosely* their *pro rata* share of certain salt saved from the burning of his warehouse, being fifty-four barrels, which he tendered to them before the institution of the present suit. Replication, that there was no such arbitration and award as alleged. The Court tried the cause, and found for the plaintiffs 204 dollars. New trial refused and judgment.

*Smith* was engaged in the forwarding, commission and storage business at *Terre-Haute.* While so engaged, his clerk, one *Livingston*, purchased one hundred and eighty-seven barrels of salt for *Stewart* and *Mosely*, which was paid for by an order drawn on them. The salt cost 1 dollar and 80 cents per barrel, and was stored for them at *Smith's* warehouse. After this *Livingston*, *Smith's* clerk, sold one hundred and fifty barrels of their salt to another person; informed them that he had done so; and told them that they could check upon *Smith's* warehouse for the same number of barrels. Afterwards *Stewart* and *Mosely* drew upon *Smith's* warehouse for seventy-five barrels of salt, which were delivered to them prior to *January* 3, 1852. Upon that day his warehouse was consumed by fire.

*Livingston*, their witness, testified that at the time of the fire there were six hundred and forty-one barrels of salt stored in the warehouse, belonging to different persons. That at that time, *Stewart* and *Mosely* had one hundred and two barrels of salt in the warehouse, which was part of the salt stored there. Witness considered that their salt was stored at *Smith's* warehouse, to be drawn out as they wanted it, just as other merchants did—thereby saving drayage; that *Smith* was not paid any thing for storage.

It appeared that three hundred and forty barrels of salt were saved from the fire, and the balance consumed; that the *pro rata* share of *Stewart* and *Mosely* of the three hundred and forty barrels saved, would be fifty-four barrels;

that, after the fire, a *pro rata* statement of loss was made out, in which all concerned acquiesced but *Stewart* and *Mosely*, who refused to agree; that the parties then agreed, by parol, to settle the difficulty by arbitration; and it was left to the said *Warren* and *Ross*, who decided that *Stewart* and *Mosely* should bear their *pro rata* share of the loss, which would be forty-eight barrels, and leave them fifty-four barrels; that both parties were present at the arbitration, were examined touching the case, and agreed to abide the award; and that the fifty-four barrels of salt were tendered to *Stewart* and *Mosely* before this suit was commenced, and by them refused.

The evidence plainly shows that *Smith* received one hundred and seventy-seven barrels of salt belonging to *Stewart* and *Mosely*, on deposit, as a bailee without compensation. And the first inquiry is, did *Smith* remain such bailee after his agent had sold one hundred and fifty barrels of that salt? In other words, did that sale put an end to the bailment?

It is a settled principle, that whenever a bailee converts the thing bailed to his own use, the contract of bailment at once ceases to exist. He becomes a wrong-doer, and the bailor may recover of the bailee, upon an implied promise to pay for the value of the property thus converted. This he may do, without any demand preceding the institution of suit.

In the present case, *Smith* sold the property bailed without the consent of the bailors, and applied the proceeds to his own use. They assented to the sale after it was made; agreed to check on his warehouse for a number of barrels equal to those sold; and actually did receive seventy-five barrels, pursuant to that agreement. But the effect of this arrangement was evidently nothing more than an acknowledgment by *Smith* that he owed *Stewart* and *Mosely* for the salt, and a promise on their part that they would receive payment of the debt in salt to be delivered to them upon their order.

It is assumed in argument that *Smith*, by agreement with *Stewart* and *Mosely*, allotted to them in his warehouse one

hundred and fifty barrels of salt, in lieu of that sold by his agent. We do not so understand the evidence. It will not bear that construction. No such agreement is shown by the record; nor does it appear that any number of barrels was, after the sale, allotted or set apart in his warehouse for their use. It can not be fairly inferred from the evidence that any portion of the salt consumed was ever owned by *Stewart* and *Mosely*. This suit, then, would be clearly maintainable, unless it is barred by the award set up in the second plea.

The award pleaded was made pursuant to a parol submission. On that account it is alleged to be of no avail, until actually performed; that a mere offer to perform is insufficient. But in the case before us the property awarded was duly tendered and refused. This, in our opinion, should be deemed equivalent to a performance. We are referred to 2 Greenleaf's Ev., sec. 69, where it is said that "an award, duly made and performed, may also be pleaded in bar of any subsequent action for the same cause." That authority is not in point. Mr. *Greenleaf* has not said that an award duly made and followed by a tender of performance, would not constitute a sufficient bar. Indeed it has been ruled, that in pleading an award in bar of an action, it is not requisite to aver performance of the thing awarded. *Armstrong* v. *Masten*, 11 Johns. R. 189.

But it is insisted that the award is not available to *Smith*, because, in making it, the arbitrators mistook the law of the case. This argument might have some weight, if it was shown that their decision was based upon the same state of facts now before us. The record does not profess to show the evidence given before the arbitrators. It is not competent for us, therefore, to decide whether they did make an erroneous application of the law to the facts under their consideration or not. In the absence of proof relative to the proceedings before the arbitrators, we must presume that they acted in good faith, and consider the award as conclusive upon the parties. *Merritt* v. *Merritt*, 11 Ill. 565.—*Mitchell* v. *Bush*, 7 Cowen 185.— Caldwell on Arb., p. 279.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*C. C. Cruft*, for the plaintiff.

*S. B. Gookins*, for the defendants.